IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DARRELL D. H.,**

    **Plaintiff,**

v.

    Civil Action 2:21-cv-4114
    Judge James L. Graham
    Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF
SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Darrell D. H., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for social security disability insurance benefits. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 9), the Commissioner's Memorandum in Opposition (ECF No. 12), Plaintiff's Reply (ECF No. 13), and the administrative record (ECF No. 6). For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner of Social Security's nondisability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

**I.  BACKGROUND**

Plaintiff protectively filed his current application for benefits on July 20, 2018,[1] alleging that he has been disabled since May 15, 2015, due to diabetes, neuropathy in both feet, left hip

---

[1] Plaintiff's previous application for benefits was denied by a decision by an ALJ on July 28, 2017. (R. at 187-204.) Plaintiff's request for review of the prior decision by the Appeals Council

arthritis, and digestive issues. (R. at 370-71, 392.) Plaintiff's application was denied initially in November 2018 and upon reconsideration in March 2019. (R. at 148-86, 231-37.) Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). (R. at 238-39.) ALJ Keith J. Kearney held a telephone hearing on July 9, 2020, at which Plaintiff, who was represented by counsel, appeared and testified. (R. at 116-47.) A vocational expert ("VE") also appeared and testified. (*Id.*) On August 5, 2020, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 10-33.) The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 2-7.)

## II. RELEVANT RECORD EVIDENCE[2]

### A. Relevant Hearing Testimony

The ALJ summarized Plaintiff's relevant hearing testimony:

At the hearing, [Plaintiff] testified that he was able to drive, grocery shop, live with others, and sometimes visit family and friends.

(R. at 23.)

---

was denied on April 18, 2018. (R. at 205-10.) The ALJ found that the issue of disability from May 15, 2015 through July 28, 2017, the date of the prior final decision, has been addressed and the doctrine of *res judicata* applies. 20 C.F.R. 404.957(c)(1). (R. at 13.)

[2] Plaintiff's Statement of Errors only raises arguments about the ALJ's treatment of the evidence relating to his mental health impairments. Accordingly, the Court will set forth only the facts relevant to Plaintiff's arguments.

B.  **Relevant Medical Records**

The ALJ summarized the relevant medical records concerning Plaintiff's mental health impairments as follows:

> During the relevant period, [Plaintiff] was diagnosed with and treated for depression. On January 19, 2017, [Plaintiff] was given a Patient Health Questionnaire-9 where he scored a 13, which was indicative of moderate depression. Upon examination by Michelle Garber, PA-C, [Plaintiff] had a normal mood and affect. Ms. Garber diagnosed [Plaintiff] with a moderate episode of recurrent major depressive disorder. (B2F, 37-39). Treatment records between July 2017 to October 2018 reflect continued appointments with Ms. Garber. Mental status findings included a normal mood and affect, normal behavior, normal judgment, and/or normal thought content. (B2F, 47-64). On July 24, 2018, [Plaintiff] admitted he was depressed. He stated that he tried several anti-depressants and they made him feel like a zombie. However, mental status findings included a normal mood and affect. (B2F, 66-68).
>
> [Plaintiff] attended a consultative psychological examination on November 7, 2018 with Ryan R. Wagner, Ph.D. He indicated that he experienced symptoms of depression most of the time characterized by decreased enjoyment, withdrawal from others, decreased attention and concentration, low motivation, poor sleep and appetite, low energy, fatiguing easily, angered easily, irritability, and feelings of helplessness, hopelessness, and worthlessness. He explained that he had nightmares of past trauma and he endorsed difficulty getting enjoyment out of things, detachment from others, and hypervigilance. He reported that he had never been psychiatrically hospitalized or received any mental health treatment. Upon mental status examination, [Plaintiff]'s thought processes were somewhat disorganized and he would often initially provide the wrong answers on testing, but would later correct himself. His thought content was noticeable for sadness about his situation and nervousness. He presented with a downcast facial expression and restricted emotional range. [Plaintiff] spoke in negative terms about various aspects of his life, but he denied any suicidal ideation or intent. He appeared tense and on edge throughout the evaluation and he maintained variable eye contact. His attention and

concentration skills were limited. [Plaintiff] appeared restless and his leg shook throughout the interview. He was able to calculate ten iterations of serial sevens in 30 seconds, but made one error. However, he was a cooperative and pleasant man with whom rapport was adequately established. [Plaintiff]'s grooming and hygiene were adequate and he appeared to put forth his best effort on testing. He was alert, responsive, and oriented to all spheres. He was not confused and he had no difficulty recalling aspects of his upbringing. He repeated seven digits forward and five digits backward. [Plaintiff] was able to recall two of three words after a brief delay. He completed serial threes in nine seconds with no errors. He was able to calculate basic subtraction, multiplication, division, and fractions. His judgment appeared to be sufficient for him to make decision affecting his future and to conduct his own living arrangements efficiently. He appeared to have adequate insight into his difficulties. Dr. Wagner diagnosed [Plaintiff] with major depressive disorder, recurrent moderate, and unspecified trauma and stressor disorder. He provided a mental functional assessment discussed below. (B14F).

On January 31, 2019, [Plaintiff] attended a follow up appointment with Ms. Garber. A depression screening score was zero. Upon mental status examination, [Plaintiff] had a normal mood and affect. He was again diagnosed with a moderate episode of recurrent major depressive disorder. (B24F, 1-3).

[Plaintiff] attended an initial behavioral health assessment on February 4, 2020 with Wendi King, LISW. He reported he decided to return to counseling as he had tried it 10 years prior. He explained that he had financial and health stressors, a depressed mood, appetite disturbance, low energy, sleep disturbance, loss of interest, irritability, generalized anxiety, and racing thoughts. Upon mental status examination, [Plaintiff] had a depressed mood with an affect that was mood-congruent. However, he had appropriate behavior and he made good eye contact. His speech and thought process were normal. [Plaintiff]'s insight and judgment [were] good. Ms. King diagnosed [Plaintiff] with depression, unspecified. (B34F, 5-7). Records reflect continued appointments with Ms. King between February 2020 and May 2020 and similar mental status examination findings, except at times [Plaintiff]'s mood was anxious with a mood-congruent affect. (B34, 8; B36F, 6-7). At other times, [Plaintiff]'s mood was normal. (B36F, 9-10). At times, Ms. King felt that [Plaintiff]'s symptoms appeared to be stable. (B34F, 8; B36F, 6). Other treatment records reflect mental status findings of a normal mood and affect, being cooperative, normal behavior, normal or appropriate for age judgment, appropriate for age insight, oriented to time, place, and person, an affect appropriate for age, and/or normal thought content. (B11F, 1-35; B12F, 4-12; B16F; B19F, 1-8, 23-31; B25F; B30F, 1-8; B33F, 1-14)

(R. at 21-22.)

> Additionally, [Plaintiff] underwent treatment, which included counseling at times, to control the symptoms of her severe mental impairments. (B34F, 5-8; B36F, 6-7, 9-10). Reported symptoms include financial and health stressors, a depressed mood, appetite disturbance, low energy, sleep disturbance, loss of interest, irritability, generalized anxiety, and racing thoughts. (B34F, 5-7). Significant mental status findings include a depressed or anxious mood with an affect that was mood-congruent. (B34F, 5-8; B36F, 6-7). Significant mental status findings from the consultative examination include somewhat disorganized thought processes, noticeably sad and nervous thought content, a downcast facial expression, a restricted emotional range, speaking in negative terms about various aspects of his life, appearing tense and on edge throughout the evaluation, variable eye contact, limited attention and concentration skills, appearing restless, leg shaking, and making one error when calculating ten iterations of serial sevens in 30 seconds. (B14F). However, other mental status findings include a normal mood and/or affect, normal behavior, normal or good judgment, good insight, appropriate behavior, good eye contact, normal speech, normal thought process, and/or normal thought content. (B2F, 47-64, 66-68; B24F, 1-3; B34F, 5-7; B36F, 9-10). Other mental status findings from the consultative examination include a cooperative and pleasant man with whom rapport was adequately established, adequate grooming and hygiene, appearing to put forth his best effort on testing, being alert, responsive, and oriented to all sphere, no confusion, no difficulty recalling aspects of his upbringing, repeating seven digits forward and five digits backward, the ability to recall two of three words after a brief delay, completing serial threes in nine seconds with no errors, the ability to mentally calculate basic subtraction, multiplication, division, and fractions, sufficient appearing judgment, and adequate appearing insight. (B14F).

(R. at 23.)

### III. ADMINISTRATIVE DECISION

On August 5, 2020, the ALJ issued his decision. (R. at 10-33.) The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act on December 31, 2020. (R. at 16.) At step one of the sequential evaluation process,[3] the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 29, 2017, the beginning of the unadjudicated period. (*Id.*) The ALJ found that Plaintiff has the following severe impairments: osteoarthritis, left hip, status post pelvic fracture, type II diabetes mellitus, and depression. (*Id.*) The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the [ALJ] finds that [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), [Plaintiff] can occasionally climb ramps and stairs, stoop, and couch, he can frequently balance, kneel, and crawl, he can never climb ladders, ropes, and scaffolds, he cannot work around unprotected heights and uneven terrain, he requires a cane for ambulation, he is limited to simple tasks, he is limited to routine and repetitive tasks, he is limited to occasional interaction with a small group of co-workers, where the contact is casual in nature, he is limited to superficial interaction with the public – by superficial it means if a member of the public were to approach and ask directions to the nearest restroom, they would be able to provide such information - but that would be the extent of the interaction, he is not able to perform at a production rate pace (e.g., assembly line work) but can perform goal-oriented work (e.g., office cleaner), and he is limited to a static work environment - tolerating few changes in a routine work setting and when said changes do occur, any changes in job duties will be explained.

(R. at 18.)

At step four of the sequential process, the ALJ determined that Plaintiff is capable of performing his past relevant work as an assembler. This work does not require the performance of work-related activities precluded by his RFC. (R. at 26.) The ALJ therefore concluded that Plaintiff has not been disabled since July 29, 2017, the beginning of the unadjudicated period. (R. at 26-27.)

IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices [Plaintiff] on the merits or deprives [Plaintiff] of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V. ANALYSIS

Plaintiff sets forth two contentions of error, first arguing that the ALJ failed to properly account for the limitations as opined by the consultative psychologist, Ryan Wagner, Psy.D.

(ECF No. 9 at 6-9). Further, Plaintiff contends that, under *Seila Law LLC v. CFPB*, 591 U.S. --, 140 S.Ct. 2183 (June 20, 2020), the Social Security Administration's structure is unconstitutional as it violates the separation of powers doctrine. (*Id.* at 9-13). As explained below, the Undersigned agrees that the ALJ failed to account for all of Dr. Wagner's opined limitations.[4]

### A. Evaluation of Opinion Evidence

Plaintiff explains that Dr. Wagner expressed concerns with Plaintiff's ability to complete tasks in a timely manner and that the ALJ accounted for those concerns by limiting Plaintiff to no production rate pace jobs. Plaintiff argues, however, that Dr. Wagner also expressed concerns regarding Plaintiff's depressive and anxiety symptoms and it is not clear that the ALJ accounted for these findings in the RFC. More specifically, Plaintiff contends that, to the extent the ALJ claims to have translated these limitations into vocationally relevant terms, the ALJ's "failure to provide any sort of insight into the translation process makes it impossible to understand the ALJ's reasoning." (ECF No. 9 at 8.) In response, the Commissioner argues that a subsequent reviewer can easily understand the ALJ's translation process because the RFC "closely tracks the assessments of Drs. Zeune and Swain," the state agency psychologists. (ECF No. 12 at 9.)

---

[4] In light of this conclusion, the Court will not undertake any analysis of the constitutional issue raised by Plaintiff's second contention of error regarding the separation of powers doctrine. *Griffith v. Franklin Cty., Kentucky*, 975 F.3d 554, 571 n.5 (6th Cir. 2020) ("As the Supreme Court has stated, '[i]f there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not pass on questions of constitutionality ... unless such adjudication is unavoidable.'" (quoting *Spector Motor Serv. v. McLaughlin*, 323 U.S. 101, 105, 65 S.Ct. 152, 89 L.Ed. 101 (1944)); (citing *Matal v. Tam*, ––– U.S. –––, 137 S. Ct. 1744, 1755, 198 L.Ed.2d 366 (2017).

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1) (2012).  An ALJ must assess a claimant's RFC based on all the relevant evidence in a claimant's case file.  *Id*.  The governing regulations[5] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)–(5).   Objective medical evidence is defined as "medical signs, laboratory findings, or both." 20 C.F.R. § 404.1513(a)(1). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3). "Evidence from nonmedical sources is any information or statement(s) from a nonmedical source (including you) about any issue in your claim." 20 C.F.R. § 404.1513(a)(4). "Medical opinion" and "prior administrative medical finding" are defined as follows:

> (2) Medical opinion. A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions . . . .
>
> > (A) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
> >
> > (B) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

---

[5] Plaintiff's application was filed after March 27, 2017. Therefore, it is governed by revised regulations redefining how evidence is categorized and evaluated when an RFC is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c (2017).

10

>> (C) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
> (D) Your ability to adapt to environmental conditions, such as temperature extremes or fumes . . . .

* * *

> (5) Prior administrative medical finding. A prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 416.1400) in your current claim based on their review of the evidence in your case record, such as:
>
>> (i) The existence and severity of your impairment(s);
>>
>> (ii) The existence and severity of your symptoms;
>>
>> (iii) Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1; . . . .
>>
>> (v) . . . your residual functional capacity;
>>
>> (vi) Whether your impairment(s) meets the duration requirement; and
>>
>> (vii) How failure to follow prescribed treatment (see § 404.1530) and drug addiction and alcoholism (see § 404.1535) relate to your claim.

§ 404.1513(a)(2), (5).

The governing regulations include a section entitled "[h]ow we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." 20 C.F.R. § 404.1520c (2017). These regulations provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Instead, they provide that an ALJ will consider medical source opinions and prior

11

administrative findings using five factors: supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(c)(1)–(5).

The regulations explicitly indicate that the "most important factors" to consider are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). Indeed, the regulations require an ALJ to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings" in a benefits determination or decision and allows that the ALJ "may, but [is] not required to, explain how [they] considered" the other factors. 20 C.F.R. § 404.1520c(b)(2). If, however, two or more medical opinions or prior administrative medical findings are equal in supportability and consistency "but are not exactly the same," an ALJ must also articulate the other most persuasive factors. 20 C.F.R. § 404.1520c(b)(3). In addition, when medical sources provide multiple opinions or multiple prior administrative findings, an ALJ is not required to articulate how he evaluated each opinion or finding individually but must instead articulate how he considered the opinions or findings from that source in a single analysis using the five factors described above. 20 C.F.R. § 404.1520c(b)(1). Finally, the regulations explain that the SSA is not required to articulate how it considered evidence from non-medical sources. 20 C.F.R. § 404.1520c(d).

The applicable regulations provide the following guidance for how ALJs should evaluate the "supportability" and "consistency" of medical source opinions and prior administrative findings:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2). In practice, this means that the "supportability" factor "concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Reusel v. Comm'r of Soc. Sec.*, No. 5:20-CV-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021) (citing SSR 96-2p, 1996 SSR LEXIS 9 (July 2, 1996) (explaining supportability and inconsistency); 20 C.F.R. § 404.1527(c)(3), (4) (differentiating "supportability" and "consistency"); 20 C.F.R. § 404.1520c(c)(1), (2) (further clarifying the difference between "supportability" and "consistency" for purposes of the post-March 27, 2017 regulations)).

The ALJ reiterated Dr. Wagner's findings as follows:

> Consultative Psychological Examiner, Dr. Wagner, provided a mental functional assessment of [Plaintiff]. He stated that [Plaintiff] performed within the average range based on his performance on a brief abstract reasoning activity and on a brief short-term memory activity that did not suggest difficulty understanding or remembering instructions. He explained that [Plaintiff] calculated serial sevens and serial threes without much difficulty that was not suggestive of issues maintaining attention and focus. Dr. [Wagner] noted that [Plaintiff] reported problems with attention and concentration within work environments that might affect his ability to complete tasks in a timely manner. He opined that [Plaintiff] functioned within the average range of intellectual functioning, which did not suggest difficulty understanding and responding to supervisor requests. He explained that [Plaintiff] described potential impacts of mental health problems on work performance that might lead to emotional instability when presented with critical supervisory feedback and difficulty developing and maintaining appropriate co-worker

13

> relationships. Dr. Wagner noted that [Plaintiff] described depressive symptoms that might compromise his ability to respon[d] to work pressures and lead to increased emotional instability and withdrawal. He stated that [Plaintiff] described anxious symptoms that might compromise his ability to response to work pressures and lead to increased likelihood of agitation and experiences of anxiety attacks. He opined that [Plaintiff] presented with average cognitive ability to adapt to work pressures. (B14F).

(R. at 25-26.)

> The ALJ found Dr. Wagner's opinion persuasive, stating
>
> … Dr. Wagner has program knowledge and the opinion was consistent with the medical evidence of record. However, the undersigned interpreted the limitations into vocational terms. The opinion is supported by significant mental status findings from treatment records and the consultative psychological examination that include [sic] Significant mental status findings include a depressed or anxious mood with an affect that was mood-congruent, somewhat disorganized thought processes, noticeably sad and nervous thought content, a downcast facial expression, a restricted emotional range, speaking in negative terms about various aspects of his life, appearing tense and on edge throughout the evaluation, variable eye contact, limited attention and concentration skills, appearing restless, leg shaking, and making one error when calculating ten iterations of serial sevens in 30 seconds. (B14F; B34F, 5-8; B36F, 6-7). The opinion is somewhat consistent with [Plaintiff]'s reports of his mental health symptoms and the opinions of the State Agency psychologists. (B14F; B34F, 5-7).

(R. at 26.)

With respect to Plaintiff's social interaction limitations, it is not clear that the ALJ incorporated all of Dr. Wagner's opinions into the RFC despite finding them persuasive. As one particularly acute example, the decision is silent as to the quality of the interaction Plaintiff can have with his supervisors. It is possible that the ALJ intended to include "supervisors" in the limitation to "occasional interaction with a small group of co-workers." It is also possible the ALJ did not find the limitation credible and, therefore, purposely left out any limitation with respect to supervisors. It is likewise possible that any limitation was simply overlooked

regarding supervisors. Absent any meaningful explanation offered by the ALJ, the Undersigned simply cannot determine the ALJ's intent without engaging in speculation. Had the ALJ limited Plaintiff to "occasional interaction" without specifying "with coworkers" the Undersigned perhaps reasonably could conclude that the limitation applied in the work setting to both coworkers and supervisors. That, however, simply is not the situation here and courts recognize a distinction between co-workers and supervisors. *See Hoffer v. Comm'r of Soc. Sec.,* No. 3:20-CV-02871-JRK, 2022 WL 584666, at *5 (N.D. Ohio Feb. 11, 2022), *report and recommendation adopted,* No. 3:20 CV 2871, 2022 WL 580756 (N.D. Ohio Feb. 25, 2022) (recognizing that the ALJ's decision to limit interaction with coworkers does not necessarily limit the interaction with supervisors).

Certainly, there is no requirement that the ALJ adopt opinions "verbatim" when finding the opinions persuasive. *Kearns v. Comm'r of Soc. Sec.,* No. 3:19 CV 01243, 2020 WL 2841707, at *12–13 (N.D. Ohio Feb. 3, 2020), *report and recommendation adopted,* No. 3:19-CV-1243, 2020 WL 2839654 (N.D. Ohio June 1, 2020). Indeed, the ALJ made clear that he was translating Dr. Wagner's opinions into more vocationally relevant terms. However, he did so in such a way that it is not clear whether he accounted for all of the opinions in the RFC, and if he did not, why not. This constitutes error preventing the Undersigned from tracing the ALJ's reasoning. *Hoffer*, 2022 WL 584666, at *6 (citing *Perrine v. Berryhill*, No. 1:18-cv-49, 2019 WL 1331597, at *7 (N.D. Ohio, Mar. 25, 2019) ("This Court recognizes that the ALJ need not address all limitations; however, where the RFC does not include the limitation, the ALJ must explain why the limitation was not included.") That is, the ALJ's failure to explain how he accounted for the

limitations identified by Dr. Wagner deprived this court of a 'logical bridge between the evidence on the record and his conclusion." *Flesicher v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011).

The Commissioner, however, argues that the ALJ expressly found the assessments of the state agency psychologists persuasive and accounted for them in his mental RFC assessment. The Commissioner's argument is not persuasive. First, as Plaintiff points out, the ALJ did not explain that Dr. Wagner's opinions were being addressed through the opinions of the state agency psychologists. Moreover, where the Court cannot evaluate the ALJ's reasoning, accepting the Commissioner's attempt to explain this omission would result in the Court "engaging in *post hoc* rationalization, which is prohibited." *Miller v. Comm'r of Soc. Sec.*, No. 1:13–CV–1872, 2014 WL 3950912, at *13 (N.D. Ohio Aug. 12, 2014); *see also Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 524 (6th Cir. 2014) ("In reviewing an ALJ's findings and conclusions, this Court shall not 'accept appellate counsel's *post hoc* rationalization for agency action in lieu of [accurate] reasons and findings enunciated by the Board.'") (quoting *Hyatt Corp. v. N.L.R.B.*, 939 F.2d 361, 367 (6th Cir. 1991)); *Garrett v. Berryhill*, No. 3:17-cv-00049, 2018 WL 1521763, at *7 (S.D. Ohio Mar. 28, 2018) (remanding where "the Commissioner improperly relies on *post hoc rationalizations* to substitute for the ALJ's deficient consideration of" an issue).

Additionally, the Undersigned finds no merit to the Commissioner's suggestion that Dr. Wagner's "broad statements" require a different outcome here. The fact remains that the ALJ did not sufficiently explain how he translated those statements into vocationally relevant terms in

formulating the RFC. Instead, as Plaintiff notes, "[t]he ALJ is seemingly asking that the subsequent reviewer trust that he has accounted for Dr. Wagner's opinions." (ECF No. 9 at 8.)

In short, it is not clear from the record how the ALJ accounted for Dr. Wagner's opinions when translating those opinions into more vocationally relevant terms. This leaves the Court unable to trace the ALJ's path of reasoning and unable to assess whether the RFC is supported by substantial evidence. Accordingly, remand is necessary.

## VI. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence does not support the ALJ's decision denying benefits. For these reasons, it is therefore **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** under Sentence Four of § 405(g).

## VII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report an\d Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a forfeiture of the right to *de novo* review by the District Judge and forfeiture of the right to appeal the judgment of the District Court. Even when timely

objections are filed, appellate review of issues not raised in those objections is forfeited. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date:   May 17, 2022                                      /s/ *Elizabeth A. Preston Deavers*
                                                          Elizabeth A. Preston Deavers
                                                          United States Magistrate Judge